**RECORD NUMBER: 13-4459**

# United States Court of Appeals

### *for the*

# Fourth Circuit

**UNITED STATES OF AMERICA,**

*Appellee,*

– v. –

**DAVID NEIL PHILLIPS, a/k/a Neil Phillips,**

*Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT RALEIGH**

# OPENING BRIEF OF APPELLANT

**STEVEN KIERSH**
**LAW OFFICE OF**
 **STEVEN KIERSH**
**5335 Wisconsin Avenue**
**Suite 440**
**Washington, DC 20015**
**(202) 997-1125**

*Counsel for Appellant*

CP  COUNSEL PRESS • VA – (800) 275-0668

# **TABLE OF CONTENTS**

**PAGE**

Table of Authorities ........................................................................ iii

Statement of Subject Matter and Appellate Jurisdiction ...................... 1

Statement of the Issue Presented for Review .................................... 2

Statement of the Case ..................................................................... 2

Statement of Facts Relevant to the Issue Presented for Review ........ 3

Summary of Argument ..................................................................... 12

Argument

    I.   The Trial Court Erred When it Denied Defendant's
        Motion to Withdraw Guilty Plea ........................................... 13

    Standard of Review .................................................................. 13

    Argument ................................................................................ 13

        1.  Evidence that the plea was not knowing and
            voluntary .................................................................. 14

        2.  The credibility of defendant's assertion of legal
            innocence ................................................................. 14

        3.  Any delay between the entry of the plea and the
            filing of a Motion to withdraw ..................................... 16

        4.  Whether defendant had the close assistance of
            counsel ..................................................................... 17

        5.  Prejudice to the government ....................................... 17

        6.  Inconvenience to the court and waste of judicial
            resources ................................................................. 17

Conclusion ..................................................................................... 18

i

Certificate of Compliance ...................................................................19

Certificate of Service ........................................................................20

## <u>TABLE OF AUTHORITIES</u>

**PAGE**

**CASES**

*Montejo v. Louisiana*,
    556 U.S. 778 (2009) ...............................................................17

*United States v. Hargrove*,
    518 Fed. Appx. (4th Cir. 2013)..................................................13

*United States v. Faris*,
    388 F.3d 452 (4th Cir. 2004).....................................................14

*United States v. Moore*,
    931 F.2d 245 (4th Cir. 1991).....................................................13

*United States v. Nicholson*,
    676 F.3d 376 (4th Cir. 2012).....................................................16

**Federal Rule of Criminal Procedure**

Fed R. Crim. P. 11 (d)(2)(B).........................................................13, 17

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

**(A)    Basis for the District's Jurisdiction**—Appellant was charged in the United States District Court for the Eastern District of North Carolina in a superseding indictment with Conspiracy to Manufacture, Distribute, or Possess with Intent to Distribute 500 Grams or more of a Mixture or Substance Containing a Detectable Amount of Methamphetamines and 5 Kilograms or more of Cocaine; Possession of a Firearm in Furtherance of a Drug Trafficking Offense; Possession of Equipment, Chemical Products and Materials which may be used to Manufacture Methamphetamines; and Possession of Pseudoephedrine with the Intent to Manufacture a Controlled Substance, and aiding and abetting therein.  Jurisdiction of the United States District Court was based upon 18 U.S.C. § 3231.

**(B) Basis for this Court's Jurisdiction**----Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1291.

**(C) Filing deadlines establishing the timeliness of the Appeal.**  The filing of the appeal is governed by Federal Rule of Appellate Procedure 4 (b) (1) (A). Sentence was imposed on June 4, 2013. A timely Notice of Appeal was filed on June 13, 2013.

**(D)** Appeal is from a final Order of the United States District entered on June 4, 2013.

1

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

I. WHETHER THE TRIAL COURT ERRED IN DENYING   DEFENDANT'S MOTION TO WITHDRAW HIS GUILTY PLEA

## STATEMENT OF THE CASE

David Phillips was charged by indictment with Knowingly and Intentionally Combining, Conspiring and Agreeing to Possess with Intent to Distribute and Possession with the Intent to Distribute 500 Grams or More of a Mixture and Substance Containing a Detectable Amount of Methamphetamine and Five Kilograms or More of Cocaine, in violation of 21 United States Code, Section 841 (a) (1); Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 United States Code Section 924 (c); Knowingly and Intelligently Possessing Equipment, Chemicals, Products and Materials with Intent to Manufacture a Controlled Substance or Listed Chemical to wit: Methamphetamine, in violation of 21 United States Code Section 843 (a) (6); and Knowingly and Intentionally Possessing a Listed Chemical, to wit: Pseudoephedrine, with the Intent to Manufacture a Controlled Substance , in violation of 18 United States Code, Section 2. (JA 15-19).

On November 6, 2012, defendant enter pleas of guilty to Counts One and Two of the Indictment charging him with Conspiracy to Distribute and

Possess with Intent to Distribute 500 Grams or more of a mixture and substance containing a detectable amount of methamphetamine and five kilograms or more of cocaine, and Possession of a Firearm in Furtherance of a Drug Trafficking Offense. The government agreed to dismiss Counts 3 & 4 of the indictment. (JA 46). At the time of his plea, defendant was represented by Wayne James Payne, Esquire.

On April 29, 2013 defendant asked the trial court for leave to withdraw his guilty pleas. (JA 50). The trial court permitted Attorney Payne to withdraw as counsel and continued the matter to May 14, 2013. (JA 58).

The parties appeared before the trial court on May 14, 2013. Defendant was represented by Attorney Brett T. Wentz.  A hearing on the Motion to Withdraw Plea was held and the trial court denied the Motion to Withdraw. (JA 78).The sentencing was continued to June 4, 2013.

On June 4, 2013 defendant was sentenced to a period of life imprisonment on Count 1 and 60 months of consecutive imprisonment on Count 2. (JA 145).

**Statement of Facts Relevant to the Issue Presented For Review:**

Appellant was indicted in a four count indictment charging conspiracy with intent to manufacture distribute, manufacture, distribute or possess with intent or possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine;

3

possession of a firearm in furtherance of a drug trafficking offense, possession of equipment, chemical, products and materials which may used to manufacture methamphetamine and possession of pseudoephedrine with intent to manufacture a controlled substance, and aiding and abetting therein.

On November 6, 2012, while represented by Wayne James Payne, Esquire, defendant entered pleas of guilty to Counts 1 and 2 of the indictment. The government agreed to dismiss counts 3 and 4 of the indictment at the time of sentencing. (JA 46). The trial court accepted the pleas of guilty. (JA 47).

A status hearing was held on April 29, 2013 at which time defendant moved to withdraw his guilty plea. Defendant asserted that he was misinformed concerning the sentencing options available to the court. "First off, he told me that when we over it that I was facing between 220 and 280 months. If I pled guilty, it would come down three levels. Two months later he said it got enhanced and that got me to life. That's not the plea I signed. When I pled guilty, I pled guilty to 220-280. (JA 52). Defendant added "I would have never pled guilty to life." (JA 52). The trial court permitted trial counsel to withdraw. (JA 58).

4

A hearing on the Motion to Withdraw Guilty Plea was conducted on May 14, 2013. Defendant's new counsel, Brett Wentz, asserted various grounds for withdrawing a guilty plea.

> One of them is prejudice to the government. I don't believe there is any prejudice to the government mainly because from looking at the objections to the Presentence Report, I think they're going to need a substantial amount of trial witnesses to uphold some of those—uphold some of the enhancements in the Presentence Report. Mr. Phillips' basis for asking to withdraw from his plea is that he was unaware of some of the drug quantities contained in the Presentence Report when he entered into his plea. I've gotten that from my discussions with Mr. Phillips. I've also talked to Mr. Payne about that.

(JA 63).

Defendant, through counsel, added, "I'm indicating that he would tell the Court that he was misled by the discovery that was provided, that he was unaware of the total amount of drug quantity... There are additional quantities in his Presentence Report that the defendant was unaware of when he entered into his plea." (JA 64). The court responded, "That's not uncommon." (Id.).

Defendant's counsel and the trial court had the following exchange:

Defense counsel: Other factors that the Court should consider are whether or not Mr. Phillips has asserted his innocence, whether the plea is knowing and voluntary. Mr. Philips would tell the Court that it wasn't knowing and voluntary. It wasn't knowing and voluntary because he was

5

unaware of the quantities. He would also tell the Court that he was unable to understand portions of his Rule 11 hearing. (Id.)

The Court: What portion was he not able to understand? (Id.)

Defense counsel: My discussion with Mr. Phillips were—He said, Mr. Wentz, I was unaware that I could get a life sentence and I said, Well—Mr. Phillips the Court would have told you that.

The Court: I told him that twice.

Defense counsel: Absolutely. And his response to me was he didn't understand that. (JA 66).

The defendant himself added, "I told my lawyer, Mr. Payne, that I did not have no firearm (sic) and he said the only way I could get that plea is to plead guilty to it and I told him there was no firearm in the crime. He coerced me into pleading guilty. I did not want to plead guilty. (JA 68.).

Former counsel Payne was called to the witness stand and the following testimony was elicited:

Q. Mr. Payne, did Mr. Phillips ever indicate to you that he wished to plead not guilty to these charges?

A. He indicated he wished to cooperate with the government and to enter into a plea agreement with the government.

6

Q. Did Mr. Phillips ever tell you that there was not a firearm involved in these crimes?

A. He told me that—to the best of my recollection, he told me that he couldn't—he didn't know if they found a firearm on the property. The discovery shows that there was a firearm or at least more than one firearm on the property.

Q. Are you aware of the location of the firearms, Mr. Payne?

A. Not as we speak, but they were on the property, I know that.

(JA 73).

Q. Mr. Payne, there was reference just now to the search that precipitated this investigation. Did you ever have any discussion with Mr. Phillips about the validity of that search warrant?

A. I know we had a discussion about it.

Q. You ultimately determined that it was legal and valid?

A. I ultimately determined with discussions with Mr. Phillips that we were not going to raise an issue to suppress it.

(JA 77).

Q. You were in here earlier when I addressed the Court and indicated that there were some drug quantities in the Presentence Report that were not previously known to the defendant prior to entering his guilty plea?

7

A. That's right.

Q. Is that an accurate depiction?

A. That would be accurate.

(Id).

Sentencing took place on June 4, 2013. Defendant represented to the

Court as follows:

> I told you I was not guilty of it. They didn't have no
> search warrant when they came to the house. Every-
> thing they got I give them. Every—all the evidence they
> got, I told  them. My lawyer told me that none of it would
> be used against me. They charged me with all of it. They
> don't have no drug weight from me. All the drugs that they
> have, I told them about. My lawyer coerced me into taking
> the plea bargain, said I was going to get a life sentence if
> I didn't take it. He said if I took it I'd get 15-18 years. I took the
> plea bargain now it comes back life. That ain't right.

(JA 84).

The defendant objected to the six point enhancement for attempting

to strike an officer. He denied that it happened and added that he drove the

front end loader the other way. Defendant also objected to an incident that

occurred on August 23, 2001.

Rodney Langdon of the Narcotics Division of the Sheriff's Office was

working on November 5, 2010 and went to the home of defendant at 468

Beulahtown Road to serve felony arrest warrants for controlled substance

violations. (JA 93). Langdon had in a vehicle on prior occasions attempted

8

to serve him and at one point a deputy had run his vehicle into a ditch while chasing him. (JA 95).

Langdon went to approach defendant who was operating "a skid steer, bobcat, kind of like a front end loader, you can haul dirt around." (JA 96). Defendant, "gagged it wide open and turned it in my direction of where I was standing." (JA 96). Langston yelled to turn the equipment but defendant came right towards his position. Id.

Agent Dees of the Johnson County Sheriff's Office was assigned to the Property Crimes Division on August 23, 2011. Dees was looking for a suspect in a break-in and that brought him to defendant's home. When he arrived at the home, Dees noticed a four-wheeler that he was looking for. Dees advised everyone at the premises he was seizing the property and everyone was being detained. (JA 105).

Defendant came out of the property and jumped into his truck, backed it in reverse and tied to get away. Dees drew his weapon and told defendant to stop. He charged defendant with assault with a deadly weapon, resisting an officer and possession of stolen property. (JA 105-06).

Special Agent Page of the North Carolina State Bureau of Investigation investigated the production of methamphetamine and

9

interviewed defendant on two occasions. On September 2, 2011 she conducted the first interview. At this point in the proceedings, defendant noted an objection to his total drug accountability and his base offense level. During that interview with Page, defendant provided information regarding his drug trafficking activities in North Carolina. He spoke about several Hispanics and stated that "in 2009, for about three months a person brought him two kilos of cocaine per week." (JA 112). Defendant also spoke about picking up two kilos of crystal methamphetamine in Atlanta, Georgia. (JA113). Defendant added that he purchased a pound of crystal meth. per week for three months, which is a total of 5.44 kilograms of crystal methamphetamine. (JA 115).

Agent Page conducted a follow-up interview on September 9, 2011 in the presence of Special Agent Michael Hall. Defendant provided substantially the same information during the second interview. (JA116).

Defendant did not have federal charges pending at the time of the interviews but did have state charges pending. He was represented by counsel at the time of both interviews. Agent Page had no contact with defendant's counsel. (JA 118). Defendant was in custody at the time of the interviews, was represented by counsel and he was not advised that the information he provided would be used against him. (JA119). Defendant

10

was not advised of his Miranda rights prior to the September 2, 2011 interview but was advised of his rights on September 9, 2012 and waived his rights. (JA Id.).

The agent clarified the testimony and stated that defendant signed a Miranda waiver on September 1st and 9th, but did not sign a waiver on September 2, 2011. (JA 121). The agent was questioned whether it was a common occurrence  for defense attorneys in Smithfield and Johnston County to allow their clients to speak to law enforcement without any protection from the law? The agent responded," No, I wouldn't say it was common, but it does happen from time to time that they arrange for an interview to be conducted." (JA 122).

Other than the information provided by defendant, the agent was not able to corroborate any of the information testified to. (JA123). The agent added, " However, since seeing him in conduct himself in court. I really don't know anymore whether he was being truthful or not." (JA 125). "I believe he lied to this court so I have no confidence that he told me the truth either." (JA Id.).

At the time of sentencing, the government moved to withdraw its request of a three point reduction for acceptance of responsibility. (JA 137). Defendant responded, "From the time he was arrested on September the—

11

you know, September the 1st of 2011, up until our last hearing when he tried to withdraw from his plea agreement, attempted to assist the government, provided the government with information, which this Court has found today that the information he provided was truthful information." (JA 138). " He tried to help the government. Agent Page testified, she just hadn't had the opportunity to follow-up on that information." (JA 139).

The trial court sentenced defendant as follows:" The defendant is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of life on Count One and a term of 60 months on Count Two to be served consecutively…He qualifies as a career offender and that designation has no impact on the guideline calculations due to the egregious nature of the instant offense." (JA 145).

## SUMMARY OF ARGUMENT

Following the entry of pleas of guilty, but prior to the imposition of sentence, defendant sought to withdraw his pleas of guilty. The fair and just standard of the Federal Rules of Criminal Procedure mandated that the trial court grant the Motion to Withdraw Guilty Pleas. Defendant represented his displeasure with his trial counsel and his trial counsel did not file a Motion to Suppress Physical Evidence that could have been dispositive of all charges in the indictment.

12

# ARGUMENT

## I. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA.

**Standard of review**: A denial of a Motion to Withdraw Guilty Plea is reviewed for abuse of discretion. *United States v. Hargrove*, 518 Fed. Appx. 141 (4th Cir. 2013).

**Argument:**

> In considering a Motion to Withdraw a Guilty Plea, the Court should weigh the defendant's evidence that the plea was not knowing or voluntary, the credibility of the defendant's assertion of his legal innocence, any delay between the entry of the plea and the filing of a motion to withdraw, whether defendant has had the close assistance of competent counsel, any prejudice to the government, and inconvenience to the court or waste of judicial resources.

*United States v. Moore, 931 F.2d 245, 248* (4th Cir. 1991).

Prior to sentencing, a defendant may withdraw a guilty plea upon a showing of a fair and just reason, Fed R.Crim. P. 11 (d)(2)(B); *United Statesv. Faris*, 388 F.3d 452, 456 (4th Cir. 2004).

When the facts of this case are applied to the factors enunciated in *Moore*, it is clear that the trial court erred in denying defendant's Motion to Withdraw Guilty Plea.

### 1.    Evidence that the plea was not knowing and voluntary.

At the hearing on April 29, 2013 defendant advised the trial court that he was misinformed about sentencing options available to the court upon entry of his plea."First off, he told me that when we went over it that I was facing between 220 and 280 months. If I pled guilty, it would come down three levels. Two months later it got enhanced and got me life. "That's not the plea I signed. I pled guilty to 220-280.  (JA 52). Defendant added "I told my lawyer that I do not have no (sic) firearm and he said the only way I could get that plea is to plead guilty and I told him there was no firearm in the crime. He coerced me into pleading guilty. I did not want to plead guilty." (JA 68).

What is clear from defendant's representations is that he did not understand the potential sentence that he was facing and that he felt compelled to accept the plea because he felt he had no choice.

### 2.    The credibility of defendant's assertion of legal innocence.

All of the contraband that was recovered and formed the basis of the indictment was seized from a search of property where defendant lived in a mobile home on his brother's property. The property where the contraband was recovered was not owned by defendant.

The significance of this portion of the argument is that a Motion to Suppress Evidence recovered from the property was never filed by defendant's trial counsel.

With respect to the filing of a Motion to Suppress Evidence, defendant's past trial counsel testified, "I ultimately determined with discussions with Mr. Phillips that we were not going to raise an issue to suppress it." (JA 77).

This simply was not an adequate inquiry concerning the decision of trial counsel not to file a Motion to Suppress Evidence and certainly not an adequate response from defendant's trial counsel concerning his decision to not file what could have been a dispositive motion. Indeed, if a Motion to Suppress Evidence was successfully litigated, the government would not have been able to proceed against defendant on any of the indicted charges.

The Motion to Suppress Evidence was clearly a relevant and critical issue that could have disposed of the case in defendant's favor. Without the incriminating evidence that might have been suppressed, defendant's claim of innocence is unquestionably credible.[1]

---

[1] Appellant has filed a Motion to Vacate Sentence in the trial court alleging ineffectiveness of trial counsel. That matter is being held in abeyance pending resolution of this appeal. In his Motion, defendant has alleged that

"When considering a motion to withdraw his guilty plea, the court may also consider other circumstantial factors that relate to whether the defendant has advanced a fair and just reason*." United States v. Nicholson*, 676 f.3d 376, 385 (4th Cir. 2012). The trial court did not consider why trial counsel decided not to file a Motion to Suppress Evidence. The record is absolutely devoid of any information pertaining to why a potentially dispositive Motion to Suppress Evidence was not filed and litigated.

Defendant has specifically denied a factual basis for the gun charges and all other contraband that could potentially have been excluded. It was error for the trial court not to have considered the decision of trial counsel to not file a Motion to Suppress Evidence.

### 3.    Any delay between the entry of the plea and the filing of a Motion to withdraw.

The plea was entered on November 6, 2012. The request to withdraw the plea occurred on April 29, 2013. There were no intervening court appearances. The essential point is that defendant sought to withdraw his guilty plea prior to imposition of sentence. He informed the court of his

---

his trial counsel was ineffective for not filing a Motion to Suppress Evidence. Defendant further alleges, upon information and belief, that the same search that served as the basis for this indictment was heard by a state court and the Motion to Suppress Evidence was granted therein.

16

decision on his first appearance following the plea and he continued to maintain his desire to withdraw his plea.

### 4.    Whether defendant had the close assistance of counsel.

It is clear that defendant was not represented by effective counsel. The question remains why a Motion to Suppress Evidence was not filed. "The Sixth Amendment guarantees a right to counsel at all critical stages of the proceedings." *Montejo v.Louisiana*, 556 U.S. 778, 786 (2009). The entry of a plea is clearly a critical stage and the failure to address why counsel did not file a Motion to Suppress Evidence raises the specter of ineffective assistance of counsel.

### 5.    Prejudice to the government.

There is no prejudice to the government. The government has access to all necessary witnesses and maintains possession of the contraband.

### 6.    Inconvenience to the court and waste of judicial resources.

This would not have been a lengthy motions hearing or trial.

The fair and just standard as set forth in Fed R. Crim. P. 11 (d)(2)(B), which guides consideration of this issue, has been satisfied by defendant. His trial counsel did not provide effective assistance and the record does not demonstrate any reason for his decision not to challenge the search that produced all of the indicted contraband.

17

## <u>CONCLUSION</u>

In light of the foregoing, Appellant prays this Honorable Court remand this matter to the trial court with appropriate instructions.

Respectfully submitted,

*/s/ Steven Kiersh*

Steven Kiersh
Law Office of Steven Kiersh
5335 Wisconsin Avenue
Suite 440
Washington, DC 20015
(202) 997-1125

*Counsel for Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** 13-4459        **Caption:** US v. DAVID PHILLIPS

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓]    this brief contains _____3,748_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓]    this brief has been prepared in a proportionally spaced typeface using
MS Word 2010_____ [*identify word processing program*] in
ARIAL, 14 point_____ [*identify font size and type style*]; **or**

[ ]    this brief has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Steven Kiersh_____

Attorney for appellant_____

Dated: 6/23/2014_____

19

# CERTIFICATE OF SERVICE

I certify that on 6/23/2014 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Jennifer P. May-Parker
OFFICE OF THE U.S. ATTORNEY
Federal Building
310 New Bern Avenue
Suite 800
Raleigh, NC 27601-1461
919-856-4530
jennifer.may-parker@usdoj.gov

/s/ Steven Kiersh

Signature

6/23/2014

Date

20